# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

MICHELLE GRUESBECK, individually and as the representative of a class of similarly-situated persons,

        Plaintiff,

v.

BATCHSERVICE LLC D/B/A BATCHDATA, a Delaware Limited Liability Company,

      and

EQUIMINE INC. D/B/A PROPSTREAM, a California Corporation,

        Defendants.

Civil Action No. 1:26-cv-00808-WJM

**JURY TRIAL DEMANDED**

---

**DEFENDANT EQUIMINE INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE RULES 12(B)(1) AND 12(B)(6)**

**STATEMENT PURSUANT TO WJM REVISED PRACTICE STANDARD III.D.1**

Pursuant to WJM Revised Practice Standard III.D.1, undersigned counsel certifies that Matthew Baker of Baker Botts L.L.P. conferred with Patrick Solberg, counsel for Plaintiff, by Microsoft Teams videoconference on April 13, 2026 regarding the grounds for this Motion and whether any alleged defect could be cured by amendment. Plaintiff opposes the Motion and does not propose amendment.

## I.    INTRODUCTION

Plaintiff brings a putative class action under Colorado's Prevention of Telemarketing Fraud Act ("PTFA"), alleging that Defendants violated Colo. Rev. Stat. § 6-1-304(4)(a)(I) by merely including her cellular phone number on a property report. She does not allege that anyone viewed her cell number (including herself), called her, used her number, or caused her any harm—only that her number appeared on a property analytics platform. The PTFA does not prohibit the incidental display of contact information, and this case fails for five independent reasons: Plaintiff lacks Article III standing; class-wide penalties are barred by the Colorado Consumer Protection Act ("CCPA"); her theory raises serious First Amendment concerns; the platform at issue is not a PTFA "directory"; and, in any event, Defendants are exempt as publishers. As such, the Complaint should be dismissed with prejudice.

## II.    BACKGROUND

### A.    The Prevention of Telemarketing Fraud Act

The PTFA regulates "fraudulent and deceptive" commercial telephone solicitation. Colo. Rev. Stat. § 6-1-301. It requires telemarketers to register with the Attorney General,

prohibits deceptive calling practices, and imposes heightened penalties for knowing violations. *Id.* §§ 6-1-303, -304(1), -305(1)(a)-(b).

In 2005, the legislature amended the PTFA to address cellular phone abuses. The newly-added subsection (4)(a)(I) prohibits knowingly listing a cellular number "in a directory for a commercial purpose" without affirmative consent. Colo. Rev. Stat. § 6-1-304(4)(a)(I). The very next provision prohibits using electronic means to identify a cellular number for commercial solicitation. *Id.* § 6-1-304(4)(a)(II). Read together, newly-added subsection (4) targets telemarketing practices involving cell phones, but does not define "directory," which must be interpreted in that narrow context.

## B.    EquiMine's Property Analysis

BatchData aggregates property, mortgage, and transaction information from public records, which include owner contact information. Compl. ¶ 17. It operated BatchLeads until EquiMine acquired it in July 2025. *Id.* ¶¶ 13, 17-18. PropStream and BatchLeads are property-analytics platforms providing software tools to real estate investors, agents, and lenders. *Id.* ¶¶ 17-18.

The platform's core function is property analysis. Users search for properties by location and attributes, not for individuals by name. *Id.* ¶¶ 6, 21. Property entries include real estate data and owner information, including—in some instances—a cellular telephone number. *Id.* ¶ 6, 21.

Contact information only appears after users identify properties, save them to a list, and request owner details. *Id*. ¶ 23. Phone numbers are thus incidental to property research and appear, if at all, only after affirmative property selection. *Id.*

- 2 -

### C.    Plaintiff's Allegations

Plaintiff alleges that her cell number appeared on a BatchLeads property report, alongside information identifying the carrier, indicating that the number is on the national Do-Not-Call Registry, and labeling the number as "reachable" and "tested." *Id*. ¶ 41. Critically, Plaintiff does not allege that she received a call, that anyone viewed her number (including herself), used her number to contact her, or that she suffered any tangible harm from the alleged listing.

She seeks statutory penalties on a class-wide basis—$300 to $500 per first offense and $500 to $1,000 per subsequent offense—for a proposed class of "[a]ll persons who were Colorado residents on or after three (3) years prior to the filing of this complaint whose cellular telephone numbers were listed by Defendants in their for-profit directory." *Id*. ¶¶ 50, 67.

## III.    STANDARD OF REVIEW

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), the Court accepts Plaintiff's allegations as true when assessing subject-matter jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682 (1946). Under Rule 12(b)(6), Plaintiff must plead facts "rais[ing] a right to relief above the speculative level." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). The Court accepts well-pleaded factual allegations as true but disregards legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.    The Court Lacks Subject-Matter Jurisdiction Because Plaintiff Has Not Alleged a Concrete Injury.

The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing. In federal court, a plaintiff must demonstrate concrete injury, regardless of whether a statute merely authorizes suit. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("[A[n injury in law is not an injury in fact."). Plaintiff alleges only that her number appeared on a property report. Compl. ¶ 41. She does not allege that anyone viewed her number (including herself), contacted her, misused her information, or caused her any harm. The Tenth Circuit requires the alleged injury to bear a close relationship to a traditionally recognized harm. *Shields v. Pro. Bureau of Collections of Md., Inc.,* 55 F.4th 823, 828–29 (10th Cir. 2022). Plaintiff's allegations do not meet that standard.

### 1.    *Plaintiff Alleges No Injury Closely Related to Any Traditionally Recognized Harm.*

Plaintiff advances three theories of injury—loss of data value, heightened risk of fraud or privacy invasion, and exposure to robocalls. Compl. ¶¶ 32, 33–39. All of these theories, however, are speculative and none establishes a concrete injury sufficient to confer standing.

Her "data value" theory is conclusory. Plaintiff has pled no facts showing that her information lost value or that she ever attempted to monetize it. *See Henderson v. Reventics, LLC*, No. 23-CV-00586, 2024 WL 5241386, at *6 (D. Colo. Sept. 30, 2024) ("As there is no actual damage to Plaintiffs due to the alleged loss in value in their personal information, this is not an injury in fact sufficient to confer standing"); *Sims v.*

*Kahrs Law Offs., P.A.*, No. 22-2112, 2023 WL 2734317, at \*6 (D. Kan. Mar. 31, 2023) (Conclusory allegations of being "deprived of the value" of personal information are insufficient to establish concrete injury). Her "heightened risk" theory is equally deficient. The Complaint alleges no access, misuse, or attempted use of her number by anyone. Speculative risk of future harm—absent plausible allegations of imminence—does not confer Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) ("[T]hreatened injury must be certainly impending to constitute injury in fact.") (citation omitted); *see also Henderson*, 2024 WL 5241386, at \*8 (A future risk of injury that relies on speculation about the decisions of independent actors is not sufficient to establish a concrete injury). Finally, Plaintiff fails to identify any traditional tort to which her alleged injuries bear a close relationship—a failure that independently defeats standing. *See Shields*, 55 F.4th at 828–30.

> **2.    *The mere inclusion of information in a database does not constitute a concrete injury.***

*TransUnion* squarely forecloses Plaintiff's theory. The U.S. Supreme Court held that the mere presence of information in a database, without dissemination to a third party or resulting harm, is not a concrete injury. *See Transunion,* 594 U.S. at 434-35. Plaintiff does not allege that any person accessed her property report, called her, or used the number for any purpose. Even assuming a subscriber requested a skip-trace on Plaintiff's property, the Complaint alleges no downstream consequence: no third party acquisition, no call, no contact, no fraud, no misuse. That is the "bare procedural violation" *TransUnion* held insufficient. *See id.* at 440. Plaintiff's allegation that her number was labeled as

"tested" and "reachable" does not change the analysis. Those metadata tags merely reflect validity assessments; not access or harm. Compl. ¶¶ 41, 43.

Article III independently requires concrete harm; the existence of a wrong does not automatically establish that harm. *TransUnion*, 594 U.S. at 427. The question here is not whether Defendants committed a statutory violation, but whether Plaintiff suffered a real-world consequence from it. She did not. Because Plaintiff has not alleged a concrete injury traceable to Defendant's alleged conduct, this Court lacks subject-matter jurisdiction and should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

**B.      Plaintiff's Class Claims for Statutory Penalties Should Be Dismissed.**

Plaintiff seeks to unlawfully recover statutory penalties on a class-wide basis. Compl. ¶ 67. The CCPA—the framework that incorporates the PTFA—forecloses that relief. Instead, § 6-1-113(2.9) authorizes class actions only for actual damages, not statutory penalties. Plaintiff's class claim for statutory damages, therefore, fails as a matter of law and must be dismissed.

**1.      *The CCPA establishes an exhaustive remedial framework for class actions.***

Section 6-1-113(2) authorizes enhanced remedies—statutory damages and consequential damages, for example—for individuals only; the statute opens with a flat prohibition: "[e]xcept in a class action." Colo. Rev. Stat. § 6-1-113(2). While the legislature recently reopened the door to class relief by enacting § 6-1-113(2.9), which authorizes recovery of "actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs," it again drew a line for class recovery: it did not authorize statutory

penalties, statutory minimums, or treble damages in class actions. *Id.* That omission is decisive.

The PTFA penalty is not "actual damages." Section 6-1-305(1)(c) authorizes "consequential damages, court costs, attorney fees, and a penalty." By listing "damages" and "a penalty" separately, the legislature confirmed they are distinct. Unlike actual and consequential damages, which compensate for a proven loss, the penalty is a fixed per-violation amount imposed regardless of harm.

Colorado courts have consistently upheld this limitation. In *Thomas v. Childhelp, Inc.*, 548 P.3d 1152, 1155 n.2 (Colo. App. 2024), the Colorado Court of Appeals recognized that, "in a [CCPA] class action, plaintiffs may not recover the statutory alternative damage award." *See also Wertz v. Clorox Servs. Co.*, No. 1:24-cv-01917, 2025 WL 684107, at *3 n.2 (D. Colo. Feb. 11, 2025) (noting treble damages under § 6-1-113(2)(a)(III) available only "in private, non-class actions"); *Allstate Ins. Co. v. Cruz*, 733 F. Supp. 3d 1098, 1110–11 (D. Colo. 2024) (confirming that only the remedies enumerated in subsection (2.9) are available in a CCPA class action).

### 2. *The "in addition to" language does not override the class-action limitation.*

Plaintiff will likely argue that § 6-1-305(1)'s phrase, "in addition to the remedies available under sections 6-1-110, 6-1-112, and 6-1-113", creates an independent penalty right unconstrained by § 6-1-113(2.9). Only one court has adopted this view—a California federal court. *See Gargus v. Upload, LLC*, No. 2:25-cv-08337, 2026 WL 121205, at *6 (C.D. Cal. Jan. 13, 2026). With respect, that reading is wrong. The operative phrase is

- 7 -

"available under." In a class action, the remedies "available under" § 6-1-113 are limited by subsection (2.9). The penalty is "in addition to" that limited set—it does not expand it. Otherwise, § 6-1-113(2.9)'s restriction of class relief to "actual damages" would be meaningless.

Colorado law rejects interpretations that render statutory limits like this superfluous. *See People v. Huckabay*, 463 P.3d 283, 286 (Colo. 2020) (courts must "giv[e] consistent, harmonious, and sensible effect to all" of a statute's parts). Moreover, *Gargus* did not consider § 6-1-113(2.9), cited no Colorado authority on the class action limitation, and failed to grapple with the surplusage problem. This Court should harmonize the CCPA's remedial provisions as the legislature designed them. Properly read, the statute forecloses class-wide penalty claims.

### 3. *Plaintiff fails to allege actual damages.*

Section 6-1-113(2.9) limits class recovery to "actual damages," but Plaintiff alleges none. She asserts only speculative and conclusory harms, such as a purported loss of data value and an increased risk of fraud or privacy invasion. Compl. ¶ 32. She does not allege any third-party disclosure (or even that she viewed her number), a single unwanted call, any monetary loss, or any concrete or legally cognizable injury. Without actual damages, the class claims are limited to injunctive relief, which, in turn, are remedies available to the attorney general or district attorney. *See* Col. Rev. Stat. § 6-1-110. As a result, Plaintiff's claim fails for lack of any cognizable relief.

- 8 -

**C.    The Court Should Dismiss Plaintiff's Broad Statutory Interpretation to Avoid Serious Constitutional Questions.**

Plaintiff's expansive reading of the PTFA's listing provision, which sweeps in property-analytics platforms rather than targeting telemarketers—raises serious First Amendment concerns. Courts must avoid such constitutional difficulties where narrower, more reasonable constructions are available. *NLRB v. Cath. Bishop of Chicago*, 440 U.S. 490, 500 (1979) ("an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available."). Reading the provision to reach only directories designed for telemarketing solicitation avoids these significant constitutional problems.

**1.    *The listing provision restricts truthful information about lawful subjects.***

As Plaintiff construes it, the provision suppresses truthful, lawfully obtained information—speech at the core of First Amendment protection. Restrictions on such speech "seldom can satisfy constitutional standards." *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (citation omitted); s*ee Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

The verb 'lists' in § 6-1-304(4)(a)(I) admits two natural constructions, and each defeats Plaintiff's claim.

If 'list' means 'to compile'—to assemble truthful information into a usable record—then the statute reaches the very act of creating speech. The U.S. Supreme Court has held that "the creation and dissemination of information are speech within the meaning of the First Amendment," and that "[f]acts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human

affairs." *Sorrell, 564 U.S. at 570*. A statute that punishes the assembly of lawfully obtained property and contact data accordingly imposes a content-based burden on protected expression and triggers heightened scrutiny. *See id.; Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015).

If, alternatively, to 'list' means to publish—to make available, in directory form, to the consuming public—then the Complaint pleads no violation. Plaintiff alleges only that her cellular number appeared on a single property report accessible to a paying subscriber. Compl. ¶¶ 41–43. She does not allege that Defendant published a directory of cellular numbers or disseminated her number to the public at large. Either way, dismissal is required: the first reading renders the provision constitutionally suspect, the second renders the Complaint factually insufficient.

### 2.    *The listing provision is content based.*

The PTFA's listing provision, § 6-1-304(4)(a)(I), is content based. A law is content based when it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. The listing provision does exactly that: it imposes liability only when the information conveyed is a cellular telephone number. Two identical ten-digit strings are treated differently based solely on whether the number routes to a cellular device or a landline; because one must examine the content of the speech itself to determine whether the statute applies, the restriction is content-based. *See Sorrell*, 564 U.S. at 563–64 (law restricting sale and use of prescriber-identifying information "enacts content- and speaker-based restrictions" because it singles out a particular category of data for disfavored treatment). Under the statute, speech conveying

- 10 -

landline (as opposed to cellular) numbers, property addresses, or other owner data is unrestricted. Because the provision draws a line based on the content of the speech rather than the identity of the speaker or the manner of dissemination, it is "presumptively unconstitutional" and may be upheld only if it is narrowly tailored to serve a compelling state interest. *Reed, 576 U.S. at 163*.

> **3.    *The provision raises serious constitutional concerns under any applicable standard of review.***

The avoidance canon requires only that the broad reading raise "grave and doubtful constitutional questions," not that the statute is certain to fail. *U.S. v. Del. & Hudson Co., 213 U.S. 366, 408* (1909). Whether this Court applies strict scrutiny or intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission of N.Y.*, 447 U.S. 557, 566 (1980), the provision raises serious concerns for two independent reasons.

First, under the Plaintiff's broad reading, the provision would not directly advance the State's asserted interest. The PTFA's stated purpose is to address "fraudulent and deceptive commercial telephone solicitation." Colo. Rev. Stat. § 6-1-301. But the listing provision, as Plaintiff construes it, does not regulate telephone solicitation at all. Defendant places no calls; the provision would regulate only the upstream appearance of a cellular number on a property-analytics platform. Under Plaintiff's theory, the supposed causal link between suppressing a number on a property-analytics platform and preventing an unwanted call is tenuous at best. A speech restriction must directly advance the governmental interest it is supposed to serve, and a restriction this far removed from

- 11 -

the conduct it targets cannot do so.

Under Plaintiff's theory, that disconnect is underscored by both the statute's under-inclusiveness and over-inclusiveness. First, cellular numbers are widely available from sources the PTFA leaves untouched—public filings, lead brokers, and prior customer interactions. Targeting a single, incidental source of information while leaving all others unregulated under Plaintiff's reading would not directly advance the government's interest; it merely redirects where numbers can be found. Second, the listing provision under Plaintiff's reading would treat telemarketing tools and property-analytics platforms alike, even though the latter are not designed for solicitation and only incidentally display owner contact information. Regulating a real-estate analytics platform would do nothing to curb unwanted calls; it would instead restrict the flow of truthful, publicly available property data to lawful commercial users, raising substantial tailoring concerns.

Less restrictive alternatives already exist and directly regulate the conduct: calling. Federal and state regimes address unwanted solicitations through the National Do Not Call Registry, 16 C.F.R. § 310.4(b)(1)(iii)(B), the TCPA, 47 U.S.C. § 227, and Colorado's own telemarketing registration requirements, Colo. Rev. Stat. § 6-1-303. In stark contrast, under Plaintiff's interpretation, the Colorado listing provision would regulate upstream speech several steps removed from any call.

**D.    EquiMine Does Not "List" Cellular Telephone Numbers "in a Directory."**

Plaintiff's allegations fail to state a prima facie claim. The PTFA prohibits listing of cellular telephone numbers in a "directory." Colo. Rev. Stat. § 6-1-304(4)(a)(I). EquiMine

does not operate a "directory" under any reasonable interpretation of the statute.

### 1.    *The PTFA Targets Telemarketing Directories, Not Real-Estate Analytics Tools.*

Section 6-1-304(4) sits within Part 3 of the CCPA, which addresses "fraudulent and deceptive commercial telephone solicitation." Colo. Rev. Stat. § 6-1-301. This prohibition, read together, targets telemarketing directories, not property-analytics tools that incidentally display owner contact information. Read in this statutory context, the phrase "commercial purpose" in § 6-1-304(4)(a)(I) means a purpose related to telephone solicitation—not *any* commercial activity. EquiMine's commercial purpose is property analytics, not telemarketing solicitation.

The statute's structure confirms this focus. Subsection (4)(b) exempts certain telemarketing calls made pursuant to a preexisting business relationship. *Id.* § 6-1-304(4)(b). Under Plaintiff's reading, a telemarketer with a preexisting relationship could list cellular numbers and solicit calls without penalty, while a property-analytics platform that makes no calls at all would face strict liability. A statute enacted to curb telemarketing fraud cannot reasonably be read to privilege telemarketers while penalizing entities that engage in no solicitation at all. *See Elder v. Williams*, 477 P.3d 694, 698 (Colo. 2020) (courts avoid constructions that "lead to illogical or absurd results").

Plaintiff's own allegations confirm this: BatchLeads is organized around properties, not people, and any phone number appears only as a downstream feature of property research. Compl. ¶¶ 21–23. Indeed, the Complaint itself describes BatchLeads as "populat[ing] a list" only after a user selects a property. Compl. ¶ 23. To "populate" is

- 13 -

retrieval—the platform assembles information in response to a user's query. A directory, by contrast, is a static publication; its contents are "listed" before anyone asks. The PTFA prohibits "list[ing]" cellular numbers "in a directory," Colo. Rev. Stat. § 6-1-304(4)(a)(I), not retrieving them on demand from a property database. Plaintiff's own pleading concedes the distinction.

Plaintiff's construction also lacks any limiting principle. If a property-analytics platform qualifies as a "directory," then so would Multiple Listing Service ("MLS") systems, county assessor databases, title company systems, and ordinary CRM tools. Nothing in the PTFA supports such a sweeping result.

Notwithstanding, in *Gargus v. Uplead, LLC*, a California federal court denied a motion to dismiss against a people-search website the court itself described as "a public directory, allowing anyone on the internet to search for individuals by name," with "cell phone numbers, job history, and email addresses" as its core product. 2026 WL 121205, at *1. Likewise, in *Adinoff v. RELX, Inc.*, No. 25CV032408 (Denver Dist. Ct. Mar. 23, 2026), a Colorado state court denied a motion to dismiss against LexisNexis, a data aggregator making cell phone numbers available through "for-sale and for-profit directories." That court declined to reach constitutional arguments and expressly reserved the class-penalty question as "a matter of first impression." Nothing in *Adinoff* addresses whether a property-analytics platform constitutes a "directory."

BatchLeads is different in kind from the platforms in *Gargus* and *Adinoff*. It is a property-analytics tool where users search for properties by location and evaluate investment opportunities based on sales history, tax records, and comparable listings.

- 14 -

Compl. ¶¶ 21, 23. Contact information appears only after a user selects a specific property. *Id.* The phone number is a downstream incident of property research, not the object of the search. Because EquiMine does not list cellular numbers "in a directory for a commercial purpose," the Complaint fails to state a violation of § 6-1-304(4)(a)(I) and should be dismissed.

### E.     EquiMine is a Publisher and Exempt from CCPA Liability

Even if the PTFA applies, EquiMine is exempt under the CCPA's publisher exclusion. The statute excludes "[p]ublishers, including outdoor advertising media, advertising agencies, broadcasters, or printers engaged in the dissemination of information or reproduction of printed or pictorial matter who publish, broadcast, or reproduce material without knowledge of its deceptive character." Colo. Rev. Stat. § 6-1-106(1)(b); *see Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 57 (Colo. 2001) (en banc). EquiMine does not originate consumer data; it compiles and disseminates information from public and third-party sources, as Plaintiff concedes. Compl. ¶ 6. That is publishing, not deception. As a result, the CCPA does not apply.

## V.     CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

- 15 -

Dated:  April 16, 2026

By: /s/ Matthew Baker
Matthew Baker (*Admitted to Practice*)
California Bar No. 308665
matthew.baker@bakerbotts.com

**Baker Botts L.L.P.**
101 California Street, Suite 3200
San Francisco, CA 94111
(Tel) 415.291.6200
(Fax) 415.291.6364

Tina Q. Nguyen (*Admitted to Practice*)
Texas Bar No. 24078670
Tina.Nguyen@BakerBotts.com

Parker Hancock (*Admitted to Practice*)
Texas Bar No. 24108256
Parker.hancock@bakerbotts.com

**Baker Botts L.L.P**.
910 Louisiana Street
Houston, TX 77002
(Tel) 713-229-1234

*ATTORNEYS FOR DEFENDANT EQUIMINE
INC. D/B/A PROPSTREAM*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of foregoing document is being served this 16th day

of April, 2026, on all counsel of record via the Court's CM/ECF system and the client

EquiMine Inc. d/b/a Propstream via the individual listed below:

Paul Lanagan
Associate General Counsel
paul.lanagan@stewart.com

/s/    Matthew Baker
Matthew Baker
