**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

MICHELLE GRUESBECK, individually and as the representative of a class of similarly-situated persons,

Plaintiff,

v.

BATCHSERVICE LLC D/B/A BATCHDATA, a Delaware Limited Liability Company,

and

EQUIMINE INC. D/B/A PROPSTREAM, a California Corporation,

Defendants.

Civil Action No. 1:26-cv-00808-WJM

**JURY TRIAL DEMANDED**

---

**DEFENDANT EQUIMINE INC.'S RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE RULES 12(B)(1) AND 12(B)(6)**

---

**STATEMENTS PURSUANT TO WJM REVISED PRACTICE STANDARD III.D.1 & 3
AND D.C.COLO. CIV. PRACTICE STANDARD 7.1B(C)**

The undersigned counsel certifies that Matthew Baker, counsel for EquiMine, conferred with Patrick Solberg, counsel for Plaintiff, by videoconference on April 13, 2026, regarding the grounds for this Motion and whether any alleged defect could be cured by amendment. Plaintiff opposes the Motion. Parker Hancock, counsel for EquiMine, subsequently conferred with Plaintiff's counsel again on June 10, 2026, regarding the grounds for this Motion. Plaintiff opposes the relief sought and does not propose further amendment.

EquiMine submits one document outside the motion: an excerpted transcript of the March 1, 2005, House second-reading discussion of House Bill 05-1288 (Ex. A). EquiMine requests that the Court take judicial notice of the existence and contents of that public legislative record and consider it solely for statutory construction, not to establish any disputed adjudicative fact. The Court may consider documents subject to judicial notice, including legislative history and other public records, without converting the Motion. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). EquiMine, therefore, does not request conversion.

## I.    INTRODUCTION

Plaintiff never received an unwanted call or text. She does not allege that anyone ever viewed, saved, exported, or used her cellular telephone number, or that she suffered any actual monetary loss. Yet from the bare appearance of her number on a property report, she seeks class-wide statutory penalties on behalf of every Colorado resident whose number may appear somewhere on Defendant's platform.

That theory is a severe overreach. The Prevention of Telemarketing Fraud Act

- 1 -

("PTFA") is aimed at fraudulent and deceptive commercial telephone solicitation. EquiMine places no calls. BatchLeads is a property analytics tool: users search for real estate by location and attributes, and owner information appears only after the user selects a property and affirmatively requests it. A property-research workflow is not a "directory" within a statute aimed at "fraudulent and deceptive commercial telephone solicitation[.]" Colo. Rev. Stat. § 6-1-301. Even after amendment, the First Amended Complaint ("FAC") still pleads only what a subscriber *could* do—not what actually happened.

Plainitff's FAC fails for at least five independent reasons: Plaintiff lacks Article III standing; the California Consumer Protection Act ("CCPA") authorizes no class-wide statutory penalties; Plaintiff's expansive reading does not pass First Amendment scrutiny; EquiMine does not "list" cellular numbers "in a directory"; and, finally, EquiMine is an exempt publisher.

## II.      BACKGROUND

### A.      The Prevention of Telemarketing Fraud Act

The PTFA regulates "fraudulent and deceptive" commercial telephone solicitation. Colo. Rev. Stat. § 6-1-301. It requires telemarketers to register with the Attorney General, prohibits deceptive calling practices, and imposes heightened penalties for knowing violations over regulated entities. *Id.* §§ 6-1-303, -304(1), -305(1)(a)-(b).

In 2005, the legislature amended the PTFA to address cellular phone abuses. The newly-added section (4)(a)(I) prohibits knowingly listing a cellular number "in a directory for a commercial purpose" without affirmative consent. Colo. Rev. Stat. § 6-1-304(4)(a)(I). Similarly, the adjacent provision prohibits using electronic means to identify a cellular

number for commercial solicitation. *Id.* § 6-1-304(4)(a)(II). Read together, and in the context of the overall CCPA, subsection (4) targets telemarketing practices involving cell phones. The PTFA does not define "directory," but that must be interpreted in within the narrow context of the statute.

### B.      BatchLeads & BatchData

BatchData aggregates property, mortgage, and transaction information (including owner contact information) from public records and other sources. FAC ¶ 17. EquiMine acquired BatchLeads from BatchData in July 2025. *Id.* ¶¶ 13, 17-18. BatchLeads is a software tool for real estate investors, agents, and mortgage lenders. FAC ¶¶ 6, 18.

BatchLeads is fundamentally a property record search platform organized around such properties: a user searches for properties by location on a searchable map, and upon selecting a property, the platform displays information about that property, including a profile of the owner. FAC ¶ 24. A user thus reaches owner information *only* by selecting a property and not by searching for an individual by name, which distinguishes the platform from a public, name-searchable people directory.

### C.      Plaintiff's Allegations

Plaintiff alleges that, as of December 2025, her property report displayed multiple telephone numbers, including her cellular number, along with other personal information, and that the number was identified as "mobile," tested, reachable, and on the National Do-Not-Call Registry. FAC ¶¶ 47, 51. She further alleges that a "Save to List" button could enable subscribers to add her information to user-curated lists, and "upon information and belief," that her information could be added in bulk. *Id.* ¶ 48.

Even after amendment, though, Plaintiff does not allege that she received a call or

- 3 -

text, that anyone used her number, or that she suffered any harm. She concedes she had no reasonable ability to discover Defendants' alleged use until shortly before filing suit. *Id.* ¶ 54. She nevertheless seeks class-wide statutory penalties for every Colorado resident whose number allegedly appeared in Defendants' alleged "for-profit directory." *Id.* ¶¶ 59, 75.

## III.     STANDARD OF REVIEW

EquiMine moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), the Court accepts Plaintiff's allegations as true. *Bell v. Hood*, 327 U.S. 678, 682 (1946). Under Rule 12(b)(6), Plaintiff must plead facts "rais[ing] a right to relief above the speculative level." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Likewise, the Court accepts well-pleaded factual allegations as true but disregards legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.     ARGUMENT

### A.     The Court Lacks Subject-Matter Jurisdiction Because Plaintiff Has Not Alleged a Concrete Injury.

The FAC should be dismissed under Rule 12(b)(1) for lack of Article III standing. A plaintiff must demonstrate concrete injury, even where a statute authorizes suit. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("an injury in law is not an injury in fact") (citing U.S. Const. art. III). Plaintiff alleges only that her number appeared in a property report; she does not allege that anyone viewed, contacted, or misused it. FAC ¶ 41. The alleged injury must bear a close relationship to a traditionally recognized harm, *Shields v. Professional Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 828–29 (10th Cir. 2022), and Plaintiff's alleged injuries do not. The FAC's new allegations describe what users *could* do, and not what they *actually* did.

- 4 -

1.    *Plaintiff Alleges No Injury Closely Related to Any Traditionally Recognized Harm.*

Plaintiff advances three theories of injury: lost data value, heightened risk of fraud or privacy invasion, and exposure to robocalls. FAC ¶¶ 32, 33–39. Each is merely speculative *risk*, and none establishes a concrete injury.

The FAC invokes smishing, SIM-swapping, and other generalized risks, but alleges no such harm to Plaintiff and no misuse of her number. Plaintiff also pleads no facts showing that her information lost value or that she ever attempted to monetize it. *See Henderson v. Reventics, LLC*, No. 23-cv-00586-MEH, 2024 WL 5241386, at *6 (D. Colo. Sept. 30, 2024) (no injury in fact where plaintiff alleges only loss in value of personal information); *Sims v. Kahrs Law Offices, P.A.*, No. 22-2112-JWB, 2023 WL 2734317, at *6 (D. Kan. Mar. 31, 2023) (same).

Her "heightened risk" theory is equally deficient: speculative risk of future harm does not confer standing absent plausible allegations of imminence. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *Henderson*, 2024 WL 5241386, at *8. A "generalized concern" about what might someday be done with her number does not suffice where the injury turns on speculation about the future acts of independent third parties. *See Clapper*, 568 U.S. at 415 n.6, 435. Finally, Plaintiff fails to identify any traditional tort to which her alleged injuries bear a close relationship—independently defeating standing. *See Shields*, 55 F.4th at 828–30.

2.    *The mere inclusion of information in a database does not constitute a concrete injury.*

*TransUnion* squarely forecloses Plaintiff's theory: information in a database, without dissemination or resulting harm, is not a concrete injury. 594 U.S. at 434-35, 440. Plaintiff alleges no access, saving, export, use, call, contact, fraud, or misuse. The Tenth

- 5 -

Circuit follows the same rule: absent publicity, the handling of a consumer's information works no concrete harm. *Shields*, 55 F.4th at 829–30; *see Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1245 (11th Cir. 2022) (en banc) ("without publicity, there is no invasion of privacy—which means no harm[]"). Plaintiff stands with the undisclosed group—she alleges only that her number exists in the database, not that EquiMine published or disseminated it to anyone.

Plaintiff cannot supply the missing dissemination through discovery. Standing must exist at the pleading stage and rest on Plaintiff's own well-pleaded factual allegations, not on speculation—pled only "upon information and belief," FAC ¶ 48—about what discovery might later reveal. *See Clapper*, 568 U.S. at 414; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff who alleges no actual access, export, or use of her number cannot invoke the prospect of discovery to manufacture the concrete injury Article III requires. Nor does Plaintiff's allegation that her number was labeled "tested" and "reachable" change the analysis; those metadata tags reflect validity assessments, not access or harm. FAC ¶¶ 41, 43.

A statutory violation alone is not concrete harm. *TransUnion*, 594 U.S. at 427. Plaintiff suffered no real-world consequence, so this Court lacks subject-matter jurisdiction and should dismiss the FAC under Rule 12(b)(1).

**B.    The CCPA Bars Class-Wide Statutory Penalties.**

Plaintiff seeks statutory penalties on a class-wide basis. FAC ¶ 67. The CCPA, which incorporates the PTFA, forecloses that relief: section 6-1-113(2.9) authorizes class actions only for actual damages, not statutory penalties. Plaintiff's class penalty claim, therefore, fails as a matter of law.

- 6 -

1.     ***The CCPA establishes an exhaustive remedial framework for class actions.***

Section 6-1-113(2) authorizes enhanced remedies, including statutory damages and consequential damages, for example, for individuals only. Indeed, the statute opens with that flat prohibition: "[e]xcept in a class action . . . ." Colo. Rev. Stat. § 6-1-113(2). Though the legislature later reopened a narrow door to class relief in section 6-1-113(2.9), authorizing "actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs," but decidedly not statutory penalties, statutory minimums, or treble damages. *Id.* That omission is decisive.

The PTFA penalty is not "actual damages." Section 6-1-305(1)(c) authorizes "consequential damages, court costs, attorney fees, and a penalty." By listing "damages" and "a penalty" separately, the legislature confirmed they are distinct. Unlike actual and consequential damages, which compensate for a proven loss, the penalty is a fixed per-violation amount imposed regardless of harm.

Colorado courts have consistently upheld this limitation. In *Thomas v. Childhelp, Inc.*, 548 P.3d 1152, 1155 n.2 (Colo. App. 2024), the Colorado Court of Appeals recognized that, "in a [CCPA] class action, plaintiffs may not recover the statutory alternative damage award[.]" *See also Wertz v. Clorox Servs. Co.*, No. 1:24-cv-01917-RMR-SBP, 2025 WL 684107, at *3 (D. Colo. Feb. 11, 2025) (noting treble damages under section 6-1-113(2)(a)(III) available only "in private, non-class actions"); *Allstate Ins. Co. v. Cruz*, 733 F. Supp. 3d 1098, 1110–11 (D. Colo. 2024) (confirming that only the remedies enumerated in subsection (2.9) are available in a CCPA class action).

2.     ***The "in addition to" language does not override the class-action limitation.***

Plaintiff will likely argue that the phrase in subsection 6-1-305(1), "in addition to the

remedies available under sections 6-1-110, 6-1-112, and 6-1-113", creates an independent penalty right unconstrained by subsection 6-1-113(2.9). Only one court—a California federal court—has adopted this view. *See Gargus v. Upload, LLC*, No. 2:25-cv-08337-MWC-AGR, 2026 WL 121205, at *6 (C.D. Cal. Jan. 13, 2026). With respect, that reading is wrong. The operative phrase is "available under." In a class action, the remedies "available under" section 6-1-113 are limited by subsection (2.9). The penalty is "in addition to" that limited set; it does not expand it. Otherwise, subsection (2.9)'s restriction of class relief to "actual damages" would be meaningless.

Colorado law rejects interpretations that render statutory limits superfluous. *See People v. Huckabay*, 463 P.3d 283, 286 (Colo. 2020) (courts must "giv[e] consistent, harmonious, and sensible effect to all" of a statute's parts). Moreover, *Gargus* did not consider subsection 6-1-113(2.9), cited no Colorado authority on the class action limitation, and failed to grapple with the surplusage problem. This Court should harmonize the CCPA's remedial provisions as the legislature designed them. Properly read, the statute forecloses class-wide penalty claims. *Shady Grove* does not change this result. Section 6-1-113's class limitation is substantive, not a mere rule of aggregation: it defines the scope of the remedy available to a class rather than who may join together to seek it, and it, therefore, governs here notwithstanding Rule 23. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416–18 (2010) (Stevens, J., concurring).

### 3. *Plaintiff fails to allege actual damages.*

Subsection 6-1-113(2.9) limits class recovery to "actual damages," but Plaintiff alleges none. She asserts only speculative harms: purported loss of data value and an increased risk of fraud or privacy invasion. FAC ¶ 32. She does not allege any third-party

- 8 -

disclosure, a single unwanted call, or any monetary loss. Without actual damages, the class claims are limited to injunctive relief. *See* Colo. Rev. Stat. § 6-1-110.

**C.    Plaintiff's Construction Is Unconstitutional and Cannot Survive Heightened Scrutiny.**

Plaintiff's expansive reading of the PTFA's "listing" provision would impose liability for compiling and disseminating truthful information based on whether a ten-digit number is cellular rather than landline. But the creation and dissemination of information is protected speech, and restrictions on disclosing truthful, lawfully obtained information "seldom can satisfy constitutional standards." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); *see VoteAmerica v. Schwab*, 121 F.4th 822, 837 (10th Cir. 2024) (the compilation and dissemination of truthful information is speech within the meaning of the First Amendment); *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001). Plaintiff's construction triggers strict scrutiny, or at minimum, intermediate scrutiny under *Central Hudson* and *Sorrell*, but fails under either test.

**1.    *Plaintiff's construction is a content-based restriction on speech.***

A law is content based when it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Plaintiff's construction does just that. It imposes liability only when the information conveyed is a cellular telephone number. Two identical ten-digit strings are treated differently solely based on whether the number routes to a cell phone or a landline.

*Sorrell* confirms the point. There, the Supreme Court held that restrictions on the sale, disclosure, and use of prescriber-identifying information imposed content- and speaker-based burdens because they singled out a category of data for disfavored treatment. 564 U.S. at 563–64. Plaintiff's reading likewise singles out cellular numbers

- 9 -

while leaving other property and owner data unrestricted.

The verb "lists" does not eliminate the constitutional problem. If to "list" means to compile truthful information into a usable record, then Plaintiff's construction reaches the creation of speech itself. If, instead, to "list" means to publish in directory form to the public, the FAC pleads no violation because Plaintiff alleges only that her number appeared on a property report within a subscription platform, not that EquiMine published a cell-phone directory or otherwise disseminated her number publicly. FAC ¶¶ 21–23. Either way, Plaintiff's claims fail.

### 2.    *Plaintiff's construction is not narrowly tailored.*

Content-based speech restrictions are "presumptively unconstitutional" and may be upheld only if narrowly tailored to serve a compelling governmental interest. *Reed*, 576 U.S. at 163. Even assuming Colorado has compelling interests in preventing telemarketing fraud and protecting consumer privacy, Plaintiff's reading is not narrowly tailored.

The PTFA is directed at "fraudulent and deceptive commercial telephone solicitation." Colo. Rev. Stat. § 6-1-301. But Plaintiff's construction reaches far beyond solicitation. The FAC alleges no actual use of Plaintiff's number for solicitation, export, or list-building. It alleges only that her number appeared in a property-analytics workflow, several steps upstream from any call or text.

That sweeping read is not tailored to the asserted harm. Plaintiff's construction would burden truthful property and owner information even where no call, text, fraud, harassment, or misuse occurs. It would also reach platforms far removed from telemarketing, including property-analytics tools, title tools, MLS-style systems, county-assessor platforms, and CRMs that display contact information as part of broader lawful

- 10 -

commercial activity. Meanwhile, better-targeted regimes already address the relevant conduct through the National Do-Not-Call Registry, 16 C.F.R. § 310.4(b)(1)(iii)(B), the Telephone Consumer Protection Act, 47 U.S.C. § 227, and Colorado's own registration requirements under the CCPA, Colo. Rev. Stat. § 6-1-303.

Plaintiff's construction is also fatally underinclusive. It bars listing a cellular number in a commercial "directory" while leaving untouched countless other channels that distribute the same information—including landline numbers, which are more likely to reach the elderly the statute purports to protect, and non-commercial directories. Colorado itself makes the same data public: voter phone numbers, including cellular numbers, are publicly accessible upon request unless marked confidential. *See* Colo. Rev. Stat. § 1-2-227(1)(a) (providing that voter registration records, whether paper or digital, are public records subject to examination and copying).

### 3.      *Mainstream Marketing does not save Plaintiff's construction.*

Plaintiff cannot avoid this result by invoking commercial-speech review. *Mainstream Marketing* upheld the National Do-Not-Call Registry as a regulation of unwanted commercial telemarketing calls to unwilling recipients. *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1237–43 (10th Cir. 2004). The registry operated at the point of intrusion through a consumer-controlled opt-out list. This case is different: Plaintiff's construction regulates upstream property-data dissemination, not calls, texts, solicitation, fraud, or misuse.

Her construction also fails under *Central Hudson*. A commercial-speech restriction must directly advance a substantial governmental interest and be no more extensive than necessary. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). Plaintiff's reading does neither: it burdens truthful upstream information

rather than the downstream solicitation conduct that causes the alleged harm.

The Court need not adopt Plaintiff's constitutionally suspect reading. Courts avoid statutory constructions that create serious constitutional problems when a narrower, reasonable construction is available. *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979). The better reading, consistent with the PTFA's text, structure, and 2005 amendment history, limits the directory clause to cell-phone directories and related tools for commercial telephone solicitation.

**D.      EquiMine Does Not "List" Cellular Telephone Numbers "in a Directory."**

The PTFA prohibits listing cellular telephone numbers in a "directory." Colo. Rev. Stat. § 6-1-304(4)(a)(I). EquiMine does not operate a "directory" under any reasonable interpretation of the statute.

**1.      *The PTFA Targets Telemarketing Directories, Not Real-Estate Analytics Tools.***

Section 6-1-304(4) sits within the CCPA's Part 3 on "fraudulent and deceptive commercial telephone solicitation." Colo. Rev. Stat. § 6-1-301. In that context, the phrase "directory for a commercial purpose" cannot mean any monetized database that may contain contact information. It must be read with the adjacent provisions directed at commercial telephone solicitation. Reading "directory" to embrace any monetized database that happens to contain a phone number reads subsection (4)'s telemarketing context out of the statute and renders its neighboring provisions superfluous, a construction this Court has declined to adopt. *See Cloudpath Networks, Inc. v. SecureW2 B.V.*, 157 F. Supp. 3d 961, 981–83 (D. Colo. 2016). Because the 2005 amendment does not define "directory," the Court looks to ordinary dictionary definitions to determine the term's plain meaning. *See Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1381

(10th Cir. 2009) ("We may consult a dictionary to determine the plain meaning of a term.") (citing *Jones v. Comm'r of Internal Revenue*, 560 F.3d 1196, 1200-1201 (10th Cir. 2009)); *Metro One Telecommc'ns., Inc. v. Comm'r of Internal Revenue*, 704 F.3d 1057, 1061 (9th Cir. 2012) (same). Oxford defines "directory" as "a book or electronic resource containing lists of information, usually in alphabetical order." Directory, *Oxford Learner's Dictionaries*. BatchLeads is no such directory: users search for properties, not people, and owner information appears only in connection with a selected parcel.

The drafting history confirms this narrower reading. The directory-listing prohibition was not in the bill as introduced. It was added by House Amendment L.002 alongside subsection (4)(a)(II)'s ban on using electronic means to identify a cellular number for solicitation and subsection (4)(b)'s preexisting-relationship exemption. *See* H.B. 05-1288, Comm. Amend. L.002 (Colo. H. Comm. on Bus. Affairs & Labor, Feb. 23, 2005); *see also* An Act Concerning a Prohibition on Knowingly Making a Commercial Telephone Solicitation to a Cellular Telephone, ch. 180, 2005 Colo. Sess. Laws 630. On second reading, the bill's sponsor explained that L.002 addressed companies "adding a cell phone directory" and distributing cell phone numbers "willy-nilly" unless consumers opted in. Ex. A, Excerpted Transcript of Second Reading on H.B. 05-1288, 65th Gen. Assemb., 1st Reg. Sess. 1:28–1:47 (Colo. Mar. 1, 2005). The same explanation tied the adjacent scanning-device provision and preexisting-relationship exception to calls placed to cell phones. Read together, subsection (4) targets opt-in cell-phone directories and tools for cell-phone telemarketing, not property-analytics workflows.

The structure of subsection (4) points the same way. Subsection (4)(b) exempts a "commercial telephone solicitation" made in relation to a preexisting commercial

- 13 -

relationship between the caller and the cell-phone owner. Colo. Rev. Stat. § 6-1-304(4)(b). That carveout makes sense only in a provision aimed at unwanted cell-phone solicitation—not under Plaintiff's theory, which targets a property-analytics platform while making calling relationships central to the exception. The better reading keeps the directory clause tied to that same solicitation-focused scheme. *See Elder v. Williams*, 477 P.3d 694, 698 (Colo. 2020) (courts avoid constructions that "lead to illogical or absurd results").

Plaintiff's own allegations confirm the distinction. BatchLeads is organized around properties: users search by location, select properties, and populate user-specific lists with owner information. FAC ¶ 27. That is retrieval and workflow functionality, not the listing of cellular numbers "in a directory." Plaintiff's amended allegations about "My Lists," exports, BatchDialer, SMS campaigns, cold-calling scripts, and "Save to List" functionality describe downstream user workflows and user communication tools, not a cell-phone directory. *See* FAC ¶¶ 28–29.

The two decisions Plaintiff may invoke involve true people-search directories. *Gargus* described its defendant as "a public directory, allowing anyone on the internet to search for individuals by name," with cell phone numbers as part of its core product. 2026 WL 121205, at *1. *Adinoff v. RELX, Inc.*, No. 25CV032408 (Denver Dist. Ct. Mar. 23, 2026), involved LexisNexis, which makes cell numbers available through "for-sale and for-profit directories"; that court declined to reach the constitutional arguments and reserved the class-penalty question as "a matter of first impression." Neither addresses whether a property-analytics platform is a "directory."

BatchLeads is different in kind: users search for properties by location and

evaluate investment opportunities based on sales history, tax records, and comparable listings; contact information appears only after a user selects a specific property. FAC ¶¶ 21, 23. The phone number is a downstream incident of property research, not the object of the search. Because EquiMine does not list cellular numbers "in a directory for a commercial purpose," the FAC fails to state a violation of section 6-1-304(4)(a)(I) and should be dismissed.

### E.    EquiMine is a Publisher and Exempt from CCPA Liability

Even if the PTFA applies, EquiMine is exempt under the CCPA's publisher exclusion, which exempts "[p]ublishers . . . engaged in the dissemination of information . . . who publish . . . material without knowledge of its deceptive character." Colo. Rev. Stat. § 6-1-106(1)(b); *see Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 57 (Colo. 2001). EquiMine does not originate consumer data; it compiles and disseminates information from public and third-party sources, as Plaintiff concedes. FAC ¶ 6. That is publishing, not deception, and the CCPA does not apply.

## V.    CONCLUSION

The PTFA exists to stop telemarketers from placing unwanted calls to cellular phones. Plaintiff received none. Stripped of its allegations about what subscribers might someday do, the FAC alleges only that Plaintiff's number appeared on a property report— an appearance that harmed no one, that supports no class-wide penalties, and that falls outside a statute aimed at telephone solicitation. The Court should dismiss the First Amended Complaint. Because Plaintiff's statutory theory fails as a matter of law and cannot be cured by amendment, the dismissal should be with prejudice; to the extent the Court rests on the absence of Article III standing, dismissal should be without prejudice for lack of jurisdiction.

Dated:  June 11, 2026

By:    /s/ Matthew Baker

Matthew Baker (*Admitted to Practice*)
California Bar No. 308665
matthew.baker@bakerbotts.com

**Baker Botts L.L.P.**
101 California Street, Suite 3200
San Francisco, CA 94111
(Tel) 415.291.6200
(Fax) 415.291.6364

Tina Q. Nguyen (*Admitted to Practice*)
Texas Bar No. 24078670
Tina.Nguyen@BakerBotts.com

Parker Hancock (*Admitted to Practice*)
Texas Bar No. 24108256
Parker.hancock@bakerbotts.com

**Baker Botts L.L.P**.
910 Louisiana Street
Houston, TX 77002
(Tel) 713-229-1234

*ATTORNEYS FOR DEFENDANT EQUIMINE
INC. D/B/A PROPSTREAM*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document is being served this 11th

day of June, 2026, on all counsel of record via the Court's CM/ECF system and the

client EquiMine Inc. d/b/a PropStream via individual listed below:

Paul Lanagan
Associate General Counsel
paul.lanagan@stewart.com

/s/    Matthew Baker
Matthew Baker